AKERMAN LLP
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
Scott Lawrence, SBN: 24087896
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com
scott.lawrence@akerman.com
-and-
Esther A. McKean (Admitted *Pro Hac Vice*)
Florida Bar No. 28124
Post Office Box 231
Orlando, FL 32802-0231
Phone: (407) 423-4000
Fax: (407) 843-6610
esther.mckean@akerman.com

COUNSEL FOR DEBTORS
AND DEBTORS-IN-POSSESSION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WILLIAMS FINANCIAL | § | Case No. 17-33578-HDH |
| GROUP, INC., *et al.* [1] | § | |
| | § | (Jointly Administered) |
| Debtors. | § | |

## DEBTORS' JOINT PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated as of December 22, 2017

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Williams Financial Group, Inc. (8972); WFG Management Services, Inc. (7450); WFG Investments, Inc. (7860) and WFG Advisors, LP (9863). The address for all the Debtors is 2711 N. Haskell Ave., Suite 2900, Dallas, TX 75204.

## TABLE OF CONTENTS

ARTICLE 1 INTRODUCTION ................................................................................ 1

SUMMARY AND OVERVIEW OF THE PLAN........................................................ 1

ARTICLE 2 DEFINED TERMS; RULES OF CONSTRUCTION ............................. 2

    2.1   Defined Terms. ........................................................................................ 2
    2.2   Rules of Construction. .......................................................................... 12

ARTICLE 3 TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS ............... 13

    3.1   Administrative Claims. .......................................................................... 13
    3.2   Fee Claims. ........................................................................................... 14

ARTICLE 4 DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ........ 14

    4.1   Priority Claims: Classes 1WFG, 1WFGI, 1WFGM and 1WFGA............................. 15
    4.2   Secured Claims: Classes 2WFG, 2WFGI, 2WFGM and 2WFGA. ........................... 15
    4.3   General Unsecured Claims: Classes 3WFG, 3WFGI, 3WFGM and 3WFGA. .......... 15
    4.4   Subordinated Claims: Classes 4WFG, 4WFGI, 4WFGM and 4WFGA.................... 15
    4.5   Equity Interests: Classes 5WFG, 5WFGI, 5WFGM and 5WFGA. .......................... 15

ARTICLE 5 TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ........... 15

    5.1   Unclassified Claims. ............................................................................. 15
    5.2   Priority Claims: Classes 1WFG, 1WFGI, 1WFGM and 1WFGA............................. 15
    5.3   Secured Claim Claims: Classes 2WFG, 2WFGI, 2WFGM and 2WFGA. ................. 16
    5.4   General Unsecured Claims: Classes 3WFG, 3WFGI, 3WFGM and 3WFGA. .......... 16
    5.5   Subordinated Claims: Classes 4WFG, 4WFGI, 4WFGM and 4WFGA.................... 16
    5.6   Equity Interests: Classes 5WFG, 5WFGI, 5WFGM and 5WFGA. .......................... 16

ARTICLE 6 ACCEPTANCE OR REJECTION OF THE PLAN ................................ 17

    6.1   Each Impaired Class Entitled to Vote Separately. ...................................... 17
    6.2   Acceptance by Impaired Classes. ........................................................... 17
    6.3   Presumed Acceptance of Plan by Unimpaired Classes................................. 17
    6.4   Impairment Controversies...................................................................... 17

ARTICLE 7 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES 18

    7.1   Rejection of Executory Contracts and Unexpired Leases............................... 18
    7.2   Approval of Rejection of Executory Contracts and Unexpired Leases. ............... 18
    7.3   Claims under Rejected Executory Contracts and Unexpired Leases.................... 18
    7.4   Insurance. ........................................................................................... 18

ARTICLE 8 MEANS OF IMPLEMENTATION OF THE PLAN ............................... 19

8.1     General Overview of Plan. ............................................................................... 19
8.2     Substantive Consolidation. ............................................................................ 19
8.3     Effective Date Transactions; Vesting of Assets in the Liquidating Trust. ................ 19
8.4     Continued Corporate Existence; Dissolution. .................................................... 20
8.5     Corporate Action. ......................................................................................... 20
8.6     Selection, Duties and Compensation of the Liquidating Trustee. ......................... 20
8.7     Appointment of the Liquidating Committee. ...................................................... 22
8.8     Section 1146 Exemption. ............................................................................... 23
8.9     Effectuating Documents; Further Transactions. ................................................ 24
8.10    Pursuit of Causes of Action. .......................................................................... 24

ARTICLE 9 THE CLAIMS RESOLUTION PROCESS ............................................................ 25

9.1     Establishment and Purpose of the Claims Resolution Process. ........................... 25
9.2     Claims Resolution Expenses. .......................................................................... 25
9.3     Selection, Duties and Compensation of the Claims Resolution Arbitrator. ............. 25
9.4     Operation of Claims Resolution Process. .......................................................... 27

ARTICLE 10 PROVISIONS GOVERNING DISTRIBUTIONS WITH RESPECT TO CLAIMS
OTHER THAN SECURITIES-RELATED CLAIMS ............................................................... 28

10.1    Determination of Claims Other Than Securities-Related Claims. .......................... 28
10.2    De Minimis Distributions as to Allowed Class 3 General Unsecured Claims. .......... 29
10.3    Unclaimed Distributions. ............................................................................... 29
10.4    Transfer of Claim. ........................................................................................ 29
10.5    One Distribution Per Holder. .......................................................................... 30
10.6    Effect of Pre-Confirmation Distributions. ......................................................... 30
10.7    No Interest on Claims or Equity Interests. ....................................................... 30
10.8    Compliance with Tax Requirements. ................................................................ 30

ARTICLE 11 CONDITIONS PRECEDENT ......................................................................... 30

11.1    Conditions Precedent to Confirmation of the Plan. ............................................ 30
11.2    Conditions Precedent to the Effective Date. ..................................................... 30
11.3    Waiver of Condition Precedent to Confirmation or the Effective Date. ................... 31

ARTICLE 12 INJUNCTIONS, EXCULPATION FROM  LIABILITY AND RELEASES ...................... 31

12.1    Exculpation from Liability. ............................................................................. 31
12.2    Debtors Releases. ........................................................................................ 32
12.3    Term of Certain Injunctions and Automatic Stay. .............................................. 32
12.4    No Liability for Tax Claims. ............................................................................ 32
12.5    Indemnification Obligations. .......................................................................... 33

ARTICLE 13 RETENTION OF JURISDICTION ................................................................... 33

13.1    General Retention. ....................................................................................... 33
13.2    Specific Purposes. ........................................................................................ 33

13.3    Closing of the Chapter 11 Case. ........................................................... 35

ARTICLE 14 MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS .. 36

14.1    Modification of Plan. ...................................................................... 36
14.2    Confirmation Over Objections.......................................................... 36

ARTICLE 15 MISCELLANEOUS PROVISIONS ............................................................ 37

15.1    No Admissions............................................................................. 37
15.2    Revocation or Withdrawal of the Plan................................................ 37
15.3    Standard for Approval of the Bankruptcy Court.................................... 37
15.4    Further Assurances....................................................................... 37
15.5    Headings. .................................................................................. 37
15.6    Notices. .................................................................................... 38
15.7    Governing Law. ........................................................................... 39
15.8    Limitation on Allowance. ................................................................ 39
15.9    Estimated Claims. ........................................................................ 39
15.10  Consent to Jurisdiction................................................................... 39
15.11  Setoffs. .................................................................................... 40
15.12  Successors and Assigns.................................................................. 40
15.13  Modification of Payment Terms. ....................................................... 40
15.14  Entire Agreement. ........................................................................ 40
15.15  Severability of Plan Provisions......................................................... 40
15.16  Confirmation Order and Plan Control................................................. 40
15.17  Plan Documents. .......................................................................... 41
15.18  Computation of Time..................................................................... 41
15.19  Substantial Consummation. ............................................................. 41

# ARTICLE 1
## INTRODUCTION

WILLIAMS FINANCIAL GROUP, INC., WFG MANAGEMENT SERVICES, INC.; WFG INVESTMENTS, INC., AND WFG ADVISORS, LP (**"Debtor"** or the **"Debtors"**) hereby propose the following Plan of Liquidation Under Chapter 11 of the United States Bankruptcy Code (the **"Plan"**) for the liquidation of the Debtors and the resolution of the outstanding Claims against the Debtors, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. The Debtors are the proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan or as otherwise defined herein.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim until such time as the Debtors' Disclosure Statement (the **"Disclosure Statement"**) has been approved by the Bankruptcy Court and distributed to Holders of Claims. The Disclosure Statement was conditionally approved by the Bankruptcy Court through the entry of the Disclosure Statement Approval Order and has been distributed simultaneously with the Plan to all parties whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtors' history, businesses, assets, and operations, (b) a summary of significant events which have occurred to date in this case, (c) a summary of the means of implementing and funding the Plan, and (d) the procedures for voting on the Plan. No materials, other than the accompanying Disclosure Statement and any exhibits and schedules and documents attached thereto or referenced therein, have been approved by the Debtors for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions or modifications set forth in Article 14 of the Plan, the Debtors expressly reserve the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## SUMMARY AND OVERVIEW OF THE PLAN[2]

The Plan provides a mechanism for the expeditious and orderly collection of assets, the resolution of disputed claims, and the distribution of funds to creditors, including distributions in the form of interim installments to the extent such distributions are determined to be advisable by

---

[2] The entire Plan and the accompanying Disclosure Statement contain important information that should be read in addition to this Summary and Overview.

the Liquidating Trustee. The Debtors' secured creditors will be paid in full, as will any allowed priority, administrative or fee claims.

The Plan recognizes that some of the Debtors' unsecured creditors have claims which are invariably either disputed or unliquidated, or both.

The Plan provides for a professional claims resolution arbitrator in order to quickly and efficiently determine the amount of the Debtors' securities arbitration and litigation claims that will be allowed. The Plan contemplates that the Court will appoint a Liquidating Committee consisting of unsecured creditors with which the Liquidating Trustee will consult.

The Plan further provides for substantive consolidation of the Debtors. This will serve to eliminate inter-company disputes over ownership of assets, allocation to claims to various estates and in general provide for the least expensive administration of the estates.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1    **Defined Terms.**

2.1.1    As used in the Plan, the following terms shall have the meanings set forth below:

**"Administrative Expense"** means (a) any cost or expense of administration of the Liquidating Cases that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Liquidating Cases on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estates or liquidating the businesses of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period, and (v) compensation for reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code; (b) any Superpriority Claim; (c) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or expenses of administration of the Liquidating Cases that are allowed by Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 5. In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Authority for taxes (and for interest and/or penalties related to such taxes) due for any Postpetition tax year or period).

**"Administrative Expense Claim"** means any Claim for the payment of an Administrative Expense.

"**Administrative Claims Bar Date**" means first business day that is thirty (30) days after the Effective Date as established by an order or orders of the Bankruptcy Court as the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim that arose or is deemed to have arisen on or after the Petition Date. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition federal, state or local taxes) that do not file an application, motion, request or other Bankruptcy Court-approved pleading by the Administrative Claims Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claims against the Debtor, or any of its Properties, or against the Estate, and such Holders shall not be entitled to participate in any distribution under the Plan on account of any such Administrative Expense Claims.

"**Affiliate**" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

"**Allowed Amount**" means the dollar amount in which a Claim is allowed.

"**Allowed Claim**" means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (i) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) any objection as to its allowance has been settled or withdrawn or has been denied by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class described.

"**Assets**" means all Property of the Debtors and their Estates of any nature whatsoever as of the Effective Date, including but not limited to all accounts receivable, assumed contracts, Cash, and the Causes of Action.

"**Ballot**" means the ballot(s) accompanying the Disclosure Statement upon which Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidating Cases.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Liquidating Cases.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidating Cases.

"**Bar Date**" means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against or proofs of Equity Interest in the Debtors, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided however, that, when used in the Plan, the term "Bar Date" shall not include the Administrative Claims Bar Date.

"**Business Day**" means any day other than a Saturday, Sunday or "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)).

"**Cash**" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check drawn on a domestic bank.

"**Causes of Action**" means any and all of the Debtors' or the Debtors' Estates' actions, claims, demands, rights, defenses, counterclaims, suits, and causes of action, whether known or unknown, in law, equity or otherwise, including: (a) all avoidance actions and rights to recover transfers avoidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and (b) any and all other claims or rights of the Debtors of any value whatsoever, at law or in equity, against any Creditor or other third party.

"**Claim**" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise, including ad valorem tax claims, Securities-Related Claims, and claims based upon or arising under any federal or state securities laws (including, without limitation, the Exchange Act and the Securities Act).

"**Claims Resolution Arbitrator**" means the person appointed as mediator and arbitrator with respect to the Securities-Related Claims pursuant to Article 9 of the Plan. The initial Claims Resolution Arbitrator shall be selected by the Debtors subject to the approval of the Bankruptcy Court, and the term shall include any successor thereto appointed pursuant to the provisions of the Plan or an order of the Bankruptcy Court.

"**Claims Resolution Expenses**" means any liabilities, costs, taxes or expenses of, or imposed upon or in respect of, the Claims Resolution Process.

**"Claims Resolution Process"** means the process for resolving all of the Debtor's Securities-Related Claims pursuant to Article 9 of the Plan.

**"Class"** means a category of Claims or Equity Interests classified together as described in Article 4 of the Plan.

**"Clerk"** means the Clerk of the Bankruptcy Court.

**"Clerk's Office"** means the Office of the Clerk of the Bankruptcy Court located at the United States Bankruptcy Court, Northern District of Texas, Dallas Division, Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas 75242.

**"Collateral"** means Property in which an Estate has an interest and that secures, in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

**"Confirmation"** or **"Confirmation of the Plan"** means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**"Confirmation Hearing"** means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**"Confirmation Order"** means the order of the Bankruptcy Court in the Liquidating Cases confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code.

**"Creditor"** means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Claims, Secured Claims, Securities-Related Claims, Subordinated Claims, and Unsecured Claims.

**"Debt"** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**"Debtor"** or **"Debtors"** means Williams Financial Group, Inc., WFG Management Services, Inc.; WFG Investments, Inc., and WFG Advisors, LP.

**"Debtor in Possession"** means Williams Financial Group, Inc., WFG Management Services, Inc.; WFG Investments, Inc., and WFG Advisors, LP, as debtor in possession in the Liquidating Cases.

**"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**"Disclosure Statement"** means the Debtors' Disclosure Statement for the Debtors' Joint Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code dated December 22, 2017, including all exhibits, appendices, and schedules attached thereto, as submitted and filed by

the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Liquidating Cases and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

"**Disclosure Statement Approval Order**" means the Order Approving the Debtors' Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of the Debtors' Plan, Combined with Notice of Hearing on Confirmation of Plan to be entered in the Liquidating Cases.

"**Disputed Claim**" means any Claim (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules as disputed, contingent or unliquidated, and, in the case of subparagraph (a) or (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled or denied by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

"**Disputed Claim Reserve**" means the reserve account established upon Confirmation to satisfy all Disputed Claims, to the extent that such claims become Allowed Claims pursuant to a Final Order of the Bankruptcy Court or upon written agreement between the Liquidating Trustee and the Claim holder.

"**Distribution Date**" means, excepts as otherwise provided in this Plan, the date or dates on which the Liquidating Trustee determines to distribute of Cash to Holders of Allowed Claims.

"**Docket**" means the docket in the Liquidating Cases maintained by the Clerk.

"**Effective Date**" means, and shall occur on, the first Business Day on which all of the conditions to the occurrence of the Effective Date contained in Article 11 of the Plan have been satisfied or waived (as provided in Article 11 of the Plan).

"**Entities Entitled to Notice**" means (a) the Debtors and the Debtors' counsel; (b) the Liquidating Trustee and his counsel; (c) the United States Trustee; (d) the Claims Resolution Arbitrator; (e) the Liquidating Committee; and (f) all parties then set forth on the Master Service List.

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means any and all of the issued and outstanding equity interests in the Debtors, including those held by all Holders of the common stock, any shares of preferred stock issued by the Debtors, any treasury shares, and any and all options, warrants, convertible debentures or similar instruments or rights (including conversion or preemptive rights) with respect to the acquisition or ownership of shares of common stock or any preferred stock issued by the Debtors, and any and all rights to subscribe to or convert into shares of such securities.

"**Estate**" or "**Estates**" means the estates created for the Debtors by Section 541 of the Bankruptcy Code upon the filing of the voluntary petition by the Debtors.

"**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

"**Exhibit**" means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

"**Fee Claims**" means an Administrative Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date.

"**Final Decree Date**" means the date on which a Final Order, obtained after a hearing on notice to all Entities Entitled to Notice and such other entities as the Bankruptcy Court may direct, has been entered determining that the Liquidating Cases should be closed.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Liquidating Cases for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of such appeal, petition for review, reargument, rehearing, reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**FINRA**" means the Financial Industry Regulatory Association, a self-regulatory organization of broker-dealers.

"**Governmental Authority**" means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or any state, or any provincial, territorial, municipal, state, local or other governmental Entity in the United States or a foreign country.

"**Holder**" means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the Schedules or books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtors in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as of the Petition Date as shown on the stock register that is maintained by the Debtors, or as otherwise determined by order of the Bankruptcy Court.

**"Impaired"** refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**"Indemnification Rights"** means any obligations or rights of the Debtors to indemnify, reimburse, advance, or contribute to the losses, liabilities or expenses of an Indemnitee pursuant to the Debtors' articles of incorporation, bylaws, policy of providing employee indemnification, applicable law, or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against an Indemnitee based upon any act or omission related to an Indemnitee's service with, for, or on behalf of the Debtors.

**"Indemnitee"** means all present and former directors, officers, employees, agents or representatives of the Debtors who are entitled to assert Indemnification Rights.

**"Insiders"** has the meaning ascribed to it in Section 101(31) of the Bankruptcy Code.

**"Insurance Coverage"** means any insurance coverage under any Insurance Policy which is available for the payment of liability or damages.

**"Insurance Policy"** means any insurance policy in effect at any time on or before the Effective Date naming the Debtors (or any predecessor, subsidiary, or past or present Affiliate of the Debtors) as an insured, or otherwise affording the Debtors (or any predecessor, subsidiary, or past or present Affiliate of the Debtor) Insurance Coverage, upon which any claim has been or may be made with respect to any Claim.

**"Intercompany Claims"** means a Claim or a Cause of Action by a Debtor against another Debtor or any direct or indirect subsidiary or affiliate of the Debtors; *provided*, for the avoidance of doubt, shall not mean a Claim or Cause of Action by any Debtor against any former officer or director of any Debtor.

**"Liabilities"** means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtors or any Affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any Affiliate, subsidiary, predecessor, successor or assign thereof, any assets of the Debtors, the business or operations of the Debtors, the Liquidating Cases, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**"Lien"** means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"**Liquidating Trustee**" means the agent appointed pursuant to Article 8.6 of the Plan as of the Effective Date to serve in such capacity from and after that date as set forth in the Plan. The initial Liquidating Trustee shall be William R. Patterson, and the term shall include any successor thereto appointed pursuant to the provisions of the Plan or an order of the Bankruptcy Court.

"**Liquidating Trust**" means the trust to be established on the Effective Date pursuant to the Liquidating Trust Agreement.

"**Liquidating Trust Assets**" means all Assets of the Debtors as of the Effective Date.

"**Liquidating Trust Agreement**" means the agreement with the Liquidating Trustee and is part of the Plan Supplement.

"**Liquidating Cases**" means the Cases commenced in the Bankruptcy Court by the Debtors on the Petition Date which are jointly administered as Williams Financial Group, Inc., Case No. 17-33578-HDH.

"**Liquidating Committee**" means the official committee to be formed as of the Effective Date as set forth in Article 8.7 of the Plan, to advise and oversee the Liquidating Trustee and to approve and consent to certain actions as specified in the Plan or provided in the Confirmation Order, solely in its capacity as such. The initial Liquidating Committee members shall be chosen by the Debtors subject to the approval of the Bankruptcy Court.

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Northern District of Texas, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Liquidating Cases.

"**Management**" means the Debtor, WFG Management Services, Inc.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means September 24, 2017, the date the petition for involuntary bankruptcy was filed in the Liquidating Cases.

"**Plan**" means the Debtors' Plan of Liquidation under Chapter 11 of the United States Bankruptcy Code dated December 22, 2017, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Plan Documents**" means all documents that aid in effectuating the Plan, including but not limited to the Plan and all Exhibits to the Plan and the Plan Supplement.

"**Plan Supplement**" means the supplemental appendix to this Plan, to be filed no later than fourteen (14) calendar days prior to the commencement of the Confirmation Hearing, which will

contain, among other things, draft forms or signed copies, as the case may be, of the Plan Supplement Documents.

"**Plan Supplement Documents**" means the documents to be included in the Plan Supplement, including the forms of documents to be executed, delivered and/or performed in connection with the implementation and consummation of this Plan.

"**Postpetition**" means arising or accruing on or after the Petition Date and before the Effective Date.

"**Prepetition**" means arising or accruing prior to the Petition Date.

"**Priority Claim**" means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Secured Claim, a Subordinated Claim, or an Unsecured Claim.

"**Professional**" means any professional employed in the Liquidating Cases with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to a Debtor or the Debtors pursuant to Bankruptcy Rule 3001, 3002 or 3003.

"**Property**" means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

"**Pro Rata Share**" means, with respect to any distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims and all Disputed Claims in such Class and, if applicable, other Classes, all determined as of the applicable Distribution Date.

"**Rejected Contracts**" has the meaning ascribed to such term in Article 7.1 of the Plan.

"**Rules**" means the Bankruptcy Rules.

"**Schedules**" means, collectively, the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in the Liquidating Cases pursuant to Bankruptcy Rule 1007, as such schedules or statements have been or may be amended or supplemented from time to time.

"**Secured Claim**" means any Claim that is (a) secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the applicable Estate's interest in the value of the Collateral securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in an Estate's interest in the Collateral securing such Claim or the

amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

"**Secured Creditor**" means any Creditor holding a Secured Claim.

"**Securities-Related Claimant**" means the Holder of a Securities-Related Claim.

"**Securities-Related Claim**" means any Claim or demand now existing or hereafter arising, in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against a Debtor and any Affiliate of the Debtors, their predecessors, successors or assigns, or their present or former officers, directors or employees, by a former client of the Debtors arising out of, or related to the Debtors' business as a registered broker dealer or as a registered investment advisor. Most of the Securities-Related Claims against the Debtors have been brought as arbitrations pursuant to the rules of FINRA; however, the term "Securities-Related Claim" includes any such Claim.

"**Subordinated Claim**" means any Claim that is subject to (a) subordination under section 510 of the Bankruptcy Code or any other statute, (b) contractual subordination, or (c) equitable subordination as determined by the Bankruptcy Court in a Final Order.

"**Substantive Consolidation**" means the equitable remedy of treating the separate Estates as one single entity.

"**Superpriority Claim**" means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

"**Unimpaired**" refers to a Claim that is not Impaired.

"**United States**" means the United States of America.

"**United States Trustee**" means the Office of the United States Trustee for the Northern District of Texas.

"**Unsecured Claim**" means any Claim which is not an Administrative Expense Claim, Fee Claim, Priority Claim, Subordinated Claim, or Secured Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) any portion of a Claim to the extent the value of the Creditor's interest in the applicable Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claims arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

"**Unsecured Creditor**" means any Creditor holding an Unsecured Claim.

"**Unsecured Distribution Amount**" means the following: (a) all recoveries from the Causes of Action, net of collection costs and reasonable attorney's fees, (b) any cash remaining in

the Debtors' bank accounts, after payment of all Allowed Administrative Expense Claims, and Allowed Priority Claims, (c) any proceeds from the sales of the Debtors' assets remaining after payment of the Allowed Secured Claims, and (d) any portion of any Claim allocated to Classes 3WFG, 3WFGI, 3WFGM and 3WFGA General Unsecured Claims by the Liquidating Trustee.

**"Voting Deadline"** means the last day to file a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

**"Voting Instructions"** means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions."

**"WFG"** means the Debtor, Williams Financial Group, Inc.

**"WFGA"** means the Debtor, WFG Advisors, LP

**"WFGI"** means the Debtor, WFG Investments, Inc.

2.2     **Rules of Construction.**

2.2.1     Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2.2     For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

# ARTICLE 3
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified in the Plan.  The treatment accorded to Administrative Expense Claims is set forth below in this Article 3.

3.1    **Administrative Claims.**

3.1.1    Administrative Claims include any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, and the wind-up, including severance payments to the Debtors' employees pursuant to the Debtors' customary pre-petition business practices, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the conduct of their business, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123 of title 28 of the United States Code, any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3.1.2    Each holder of an Allowed Administrative Claim shall receive from the Debtors or Liquidating Trustee (a) Cash in an amount equal to the amount of such Allowed Administrative Claim on the later of the Effective Date and the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable, or (b) such other treatment as the Debtors or Liquidating Trustee and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims incurred in the ordinary course of the Debtors' business shall be paid when due.

3.1.3    Unless a prior date has been established pursuant to the Bankruptcy Code, the Bankruptcy Rules or a prior order of the Court, the Confirmation Order will establish a bar date for filing applications for allowance of Administrative Claims, which date will be the first business day that is thirty (30) days after the Effective Date. Holders of Administrative Claims not paid prior to the Effective Date shall submit requests for payment on or before the applicable Administrative Claims Bar Date or forever be barred from doing so. The notice of confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth the Administrative Claims Bar Date and constitute good and sufficient notice of the Administrative Claims Bar Date. The Liquidating Trustee shall have 90 days (or such longer period as may be allowed by order of the Court, which may be entered without notice or a hearing) following the Administrative Claims Bar Date to review and object to all Administrative Claims.

3.2 **Fee Claims.**

3.2.1 Fee Claims are Administrative Claims under section 330(a), 331 or 503 of the Bankruptcy Code for compensation of a Professional or other Person for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date.

3.2.2 All requests for compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Debtors, counsel to the Debtors, the United States Trustee, Liquidating Trustee, counsel to the Liquidating Trustee and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date. Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors, or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date. Objections to any Fee Claims must be filed and served on the Debtors, counsel for the Debtors, Liquidating Trustee, counsel for the Liquidating Trustee and the requesting party no later than sixty (60) days after the Effective Date.

## ARTICLE 4
## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Fee Claims are not classified and are excluded from the Classes set forth in Articles 4.1 through 4.5 below. The treatment accorded Administrative Claims and Fee Claims is set forth in Article 3 of the Plan. A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class.

Except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all Assets (and all proceeds thereof) and all liabilities of each of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors, and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.

For purposes of consistency there are five identical Classes for each Debtor.  In some cases, however, a Class is an Empty Class.  Empty Classes are disregarded for vote solicitation and Plan Acceptance purposes.

4.1     **Priority Claims: Classes 1WFG, 1WFGI, 1WFGM and 1WFGA.**

Class 1 consists of all Allowed Priority Claims.

Classes 1WFGM and 1WFGA are empty.

4.2     **Secured Claims: Classes 2WFG, 2WFGI, 2WFGM and 2WFGA.**

Class 2 consists of Allowed Secured Claims.

Classes 2WFGI, 2WFGM and 2WFGA are empty.

4.3     **General Unsecured Claims: Classes 3WFG, 3WFGI, 3WFGM and 3WFGA.**

Class 3 consists of all Allowed General Unsecured Claims.

Class 3WFGM is empty.

4.4     **Subordinated Claims: Classes 4WFG, 4WFGI, 4WFGM and 4WFGA.**

Class 4 consists of Subordinated Claims.

The Debtors are not aware of any subordinated claims.

4.5     **Equity Interests: Classes 5WFG, 5WFGI, 5WFGM and 5WFGA.**

Class 5 consists of all Equity Interests in the Debtors.

There are no Empty Classes in Class 5.

# ARTICLE 5
# TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5.

5.1     **Unclassified Claims.**

Allowed Administrative Expense Claims and Allowed Priority Claims shall receive the treatment set forth in Article 3 of the Plan.

5.2     **Priority Claims: Classes 1WFG, 1WFGI, 1WFGM and 1WFGA.**

Each Holder of an Allowed Priority Claim shall be paid on the later of the thirtieth day after the Effective Date or such later date as such claim may become an Allowed Claim (a) an

amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Liquidating Trustee, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court. Class 1 is Unimpaired.

Each Class 1 is Unimpaired.

### 5.3    Secured Claim Claims: Classes 2WFG, 2WFGI, 2WFGM and 2WFGA.

Each Holder of an Allowed Secured Claim shall receive one of the following at the Debtor or the Liquidating Trustee's sole option: (a) the Debtor or the Liquidating Trust shall surrender all collateral securing such Claim to the Holder thereof, in full satisfaction of such Holder's Allowed Class 2A Claim, without representation or warranty by, or recourse against, the Debtor or the Liquidating Trust, or (b) such Holder shall receive the proceeds from the sale of such Holder's Collateral.

Each Class 2 is Unimpaired.

### 5.4    General Unsecured Claims: Classes 3WFG, 3WFGI, 3WFGM and 3WFGA.

Except to the extent that a holder of an Allowed General Unsecured Claim shall have agreed in writing to a different treatment, each holder of an Allowed General Unsecured Claim shall receive a *pro rata* share of the Unsecured Distribution Amount. Under no circumstances shall any holder of an Allowed General Unsecured Claim receive more than payment in full of such Claim.

Each Class 3 is Impaired.

### 5.5    Subordinated Claims: Classes 4WFG, 4WFGI, 4WFGM and 4WFGA.

Holders of Subordinated Claims shall receive no distribution under the Plan until all Allowed Administrative Priority and General Unsecured Claims have been paid in full. Thereafter, Holders of the Subordinated Claims shall receive payments of the remaining funds in the Liquidating Trust up to the full amount of their Allowed Subordinated Claim.

Each Class 4 is Impaired.

### 5.6    Equity Interests: Classes 5WFG, 5WFGI, 5WFGM and 5WFGA.

The Holders of Equity Interests in the Debtors shall receive payments of the remaining funds in the Liquidating Trust after Allowed Subordinated Claims have been paid in full.

Each Class 5 is impaired.

## ARTICLE 6
## ACCEPTANCE OR REJECTION OF THE PLAN

6.1    **Each Impaired Class Entitled to Vote Separately.**

The Holders of Claims in each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.

6.2    **Acceptance by Impaired Classes.**

Classes 3WFG, 3WFGI, 3WFGM, 3WFGA, 4WFG, 4WFGI, 4WFGM, 4WFGA, 5WFG, 5WFGI, 5WFGM, and 5WFGA, are Impaired under the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

6.3    **Presumed Acceptance of Plan by Unimpaired Classes.**

Each of Secured and Priority Claims are Unimpaired under the Plan. Pursuant to Section 1126(f) of the Bankruptcy Code, each such Class and the Holders of Claims in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Claims in such Classes are not being solicited by the Debtors. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtors in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

6.4    **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1    **Rejection of Executory Contracts and Unexpired Leases.**

Pursuant to Sections 365 and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and another Person or Entity shall be deemed rejected by the Debtors as of the Confirmation Date (collectively, the "Rejected Contracts"), unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume any executory contract or unexpired lease.

7.2    **Approval of Rejection of Executory Contracts and Unexpired Leases.**

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7 of the Plan.

7.3    **Claims under Rejected Executory Contracts and Unexpired Leases.**

Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease and served upon the Debtor or such Claim shall be forever barred and unenforceable against the Debtor and/or the Liquidating Trustee. With respect to the Rejected Contracts, the Bar Date shall be thirty (30) days after the Confirmation Date. Such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be General Unsecured Claims. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.4    **Insurance.**

None of the Disclosure Statement, Plan, or Confirmation Order shall: (a) modify the coverage provided under the Debtors' current, unexpired insurance policies, (b) except as provided for in the Plan, alter in any way the rights and obligations of the Debtors' insurers under their policies, or (c) except as provided in the Plan, alter in any way the rights and obligations of the Debtors or the Liquidating Trustee, as applicable, under the insurance policies, including, without limitation, any duty of the Debtors or the Liquidating Trustee, as applicable, to defend, at their own expense, against claims asserted under the insurance policies. The Debtors' insurers shall retain any and all defenses to coverage that such insurers may have, including the right to contest and/or litigate with any party, including the Debtors and the Liquidating Trustee, as applicable, the existence, primacy, and/or scope of available coverage under any alleged applicable policy. Nothing in the Disclosure Statement, Plan or Confirmation Order in any way permits any holder of a Claim to recover the same amounts from the insurers and any other party including, but not limited to, the Debtors or the Liquidating Trustee. Nothing in the Disclosure Statement, Plan, or Confirmation Order shall modify the rights of the Debtors' insurers with respect to the maintenance

or use of any letters of credit, or other collateral and security provided to them, in connection with liabilities arising under the applicable insurance agreements.

## ARTICLE 8
## MEANS OF IMPLEMENTATION OF THE PLAN

8.1    **General Overview of Plan.**

This Plan is a liquidating plan that calls for the liquidation of the Assets of the Debtors.  On the Effective Date of the Plan, all Property owned by the Debtors shall be transferred to the Liquidating Trust and the Liquidating Trustee and a Claims Resolution Arbitrator shall be appointed to implement the terms of the Plan with respect to the Liquidating Trust and the Claims Resolution Process, as set forth in Articles 8 and 9 of the Plan.  After Confirmation, the Liquidating Trustee will be empowered to pursue and structure Settlement Agreements.

8.2    **Substantive Consolidation.**

8.2.1    Except as expressly provided in this Plan (or as otherwise ordered by the Bankruptcy Court), on the Effective Date: (a) all assets (and all proceeds thereof) and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (b) no distributions shall be made under this Plan on account of Intercompany Claims among the Debtors and all such Claims shall be eliminated and extinguished, (c) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor, and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (d) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be treated filed against the consolidated Debtors and shall be treated one Claim against and obligation of the consolidated Debtors, and (e) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.

8.3    **Effective Date Transactions; Vesting of Assets in the Liquidating Trust.**

Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 11.2 of the Plan, on or as of the Effective Date, the Plan shall be implemented and the following actions shall occur in the following order:

8.3.1    the appointment of the Liquidating Trustee shall become effective;

8.3.2    the Liquidating Trust shall be automatically substituted for the Debtors as a party to all contested matters, adversary proceedings, claims, administrative proceedings and lawsuits, both within and outside of the Bankruptcy Court, involving the Assets, Claims against the Debtors, the Causes of Action, and the resolution of Disputed Claims;

8.3.3    all of the Assets shall vest in the Liquidating Trust, and all privileges with respect to the Assets, including the attorney/client privilege, to which the Debtors is or would be

entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Liquidating Trust;

8.3.4    the appointment of the Claims Resolution Arbitrator shall become effective; and

8.3.5    the appointment of the Liquidating Committee shall become effective.

8.4    **Continued Corporate Existence; Dissolution.**

8.4.1    As of the Effective Date, the Debtors shall be administratively dissolved and Liquidating Trustee shall file a certificate of dissolution (or its equivalent) with the secretary of state or similar official.

8.4.2    The officers and directors of the Debtors immediately prior to the Effective Date shall be deemed to have resigned without any further action by any party.

8.4.3    From and after the Confirmation Date and until the Effective Date, the board of directors and officers of the Debtors shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

8.4.4    Notwithstanding anything to the contrary set forth in this Article 8.3 or elsewhere in the Plan, the management and administration of the Liquidating Trust (and the Assets) shall be the sole responsibility of the Liquidating Trustee, subject to review by the Liquidating Committee as provided herein.  Notwithstanding anything to the contrary set forth in this Article 8.4 or elsewhere in the Plan, the management and administration of the Claims Resolution Process as it applies to Securities Related Claims shall be the sole responsibility of the Claims Resolution Arbitrator.

8.5    **Corporate Action.**

All matters provided for under the Plan involving the corporate structure of the Debtors or the Liquidating Trust, or any corporate action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action.

8.6    **Selection, Duties and Compensation of the Liquidating Trustee.**

8.6.1    The initial Liquidating Trustee shall be William R. Patterson, and his appointment shall be effective as of the Effective Date.

8.6.2    The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in this Plan and in the Confirmation Order.  The responsibilities of the Liquidating Trustee shall include (i) object to the allowance of Claims; (ii) open, maintain and administer bank accounts; (iii) engage employees and professional persons, including in the Liquidating Trustee's discretion, professionals previously retained by the Debtors, as necessary or desirable to assist in carrying out the provisions of and purposes underlying the Plan and the Liquidating Trust Agreement; (iv) incur and pay reasonable fees, costs, and expenses

in connection with administering the Liquidating Trust and implementing the terms of the Plan and the Liquidating Trust Agreement, including the reasonable fees, costs and expenses of retained professionals and including the reasonable expenses of the members of the Liquidating Committee, in accordance with the provisions of the Plan and the Liquidating Trust Agreement; (v) expend the Liquidating Trust Assets as necessary to maintain the value of the assets of the Liquidating Trust during liquidation; (vi) pay the reasonable and necessary expenses incurred by the Liquidating Committee; (vii) investigate, analyze, commence, prosecute, litigate, compromise and otherwise administer the Causes of Action, and take all other necessary and appropriate steps to collect, recover, settle, liquidate or otherwise reduce the Liquidating Trust Assets to Cash; (viii) approve compromises of the Causes of Action and all Claims, and execute all necessary and appropriate documents to effectuate such settlements, without notice to any party and without further order of the Bankruptcy Court; (ix) administer, sell, liquidate, or otherwise dispose of the Liquidating Trust Assets in accordance with the terms of the Plan and the Liquidating Trust Agreement; (x) represent the Liquidating Trust before the Bankruptcy Court and other courts of competent jurisdiction, if necessary, with respect to matters regarding the administration of the Liquidating Trust; (xi) comply with any applicable orders of the Bankruptcy Court and any other court of competent jurisdiction, and all applicable laws and regulations, concerning the matters set forth herein; (xii) hold legal title to any and all rights of the Consolidated Debtors, the Estate and the Beneficiaries under the Liquidating Trust Agreement in or arising from the Liquidating Trust Assets; (xiii) represent the Liquidating Trust in any arbitration and participate in said arbitrations; (xiv) in reliance upon the Schedules and the claims register maintained in the Bankruptcy Case, maintain on the Liquidating Trustee's books and records a register evidencing the beneficial interest held by each Beneficiary as provided by the Liquidating Trust Agreement; (xv) make all distributions to the Holders of Allowed Claims provided for, or contemplated by, the Plan; (xvi) establish the Disputed Claims Reserve; (xvii) establish the Administrative Reserve; (xviii) make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Liquidating Trust and file tax returns for the Liquidating Trust as a grantor trust in accordance with Treasury Regulations Section 1.671-4(a); (xix) pay any taxes imposed on the Liquidating Trust; (xx) send annually to each Beneficiary under the Liquidating Trust Agreement a separate statement of the Beneficiary's share of the Liquidating Trust's income, gain, loss, deduction or credit, and instruct all such Beneficiaries to report such items on their federal tax returns; (xxi) as soon as reasonably practicable after the Effective Date, make a good faith valuation of the Liquidating Trust Assets which shall be made available from time to time, to the extent relevant, and used consistently by all parties for all income tax purposes; (xxii) carry insurance coverage if the Liquidating Trustee deems such insurance necessary and appropriate in his sole and absolute discretion; (xxiii) exercise such other powers as may be vested in the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement, the Confirmation Order, or other Final Orders of the Bankruptcy Court; (xxiv) execute any documents, instruments, contracts or agreements necessary or desirable to carry out the powers and duties of the Liquidating Trustee; (xxv) provide to the Liquidating Committee such reports on the progress of the Plan, as may be reasonably requested by the Liquidating Committee; (xxvi) act as the records custodian of the Debtors pursuant to SEC and FINRA requirements; (xxvii) stand in the shoes of the Consolidated Debtors and the Estate for all purposes consistent with the Plan and the Liquidating Trust Agreement; and (xxix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

8.6.3    The Liquidating Trustee shall be deemed to be for all purposes the "representative" of the Liquidating Trust as set forth in Section 1123(b) of the Bankruptcy Code to retain, enforce, settle and prosecute all Causes of Action. The Liquidating Trustee shall use his best efforts to promptly liquidate the Assets of the Liquidating Trust as soon as practicable at minimal cost and to distribute the proceeds thereof as soon as practicable pursuant to this Plan.

8.6.4    The initial compensation of the Liquidating Trustee shall be approved by the Bankruptcy Court, and that compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Liquidating Trustee, shall be paid by the Liquidating Trust. From and after the Effective Date, any professionals engaged or retained by the Liquidating Trustee shall be entitled to reasonable compensation to perform services for the Liquidating Trustee. The fees and expenses of the Liquidating Trustee and any professionals employed by the Liquidating Trustee shall be subject to review by the United States Trustee. Unless the Liquidating Committee or the United States Trustee files an objection with the Bankruptcy Court within twenty (20) days of the receipt of any invoice of the Liquidating Trustee or his professionals, the Liquidating Trustee shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Trustee and his professionals out of the Assets of the Liquidating Trust. If an objection is filed, then the Liquidating Trustee shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Liquidating Trustee and his professionals that are not subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed. The Liquidating Trustee and any professionals he hires hall not be required to file any applications for compensation with the Bankruptcy Court.

8.6.5    The Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Liquidating Trust.

8.6.6    The Liquidating Trustee shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal. In the event of the death, resignation or removal of the Liquidating Trustee, any successor thereto shall be selected by the Liquidating Committee and officially appointed following notice to the Master Service List and a hearing before the Bankruptcy Court.

8.7    **Appointment of the Liquidating Committee.**

8.7.1    On the Effective Date, a Liquidating Committee shall be established for the purpose of overseeing the Liquidating Trustee's implementation of the Plan, administration of the Liquidating Trust Assets, and distributions on account of Allowed Claims under the Plan, as specifically provided for pursuant to the terms of the Plan. The Liquidating Committee shall be comprised of no more than three (3) members selected by the Debtors who are willing to serve on the Liquidating Committee on and after the Effective Date. In the event there is a voting deadlock on the matters that are subject to the Liquidating Committee's consideration, then to settle the deadlock a vote by the Liquidating Trustee shall be solicited and shall be determinative, except in

situations involving a conflict of interest on the part of the Liquidating Trustee. Subject to and in accordance with the provisions of the Plan, the Confirmation Order and any other Final Order of the Bankruptcy Court, each member of the Liquidating Committee shall be entitled to quarterly compensation equal to $3,000 and to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Liquidating Committee, which shall be paid out of the Liquidating Trust Assets. On or after the Effective Date, the Liquidating Committee may retain such professionals (including, without limitation, attorneys and accountants) as may be deemed necessary or desirable by the Liquidating Committee to assist and advise the Liquidating Committee in the performance of its duties.

8.7.2    The Liquidating Committee will oversee certain decisions of the Liquidating Trustee and approve certain material transactions in connection with the administration and liquidation of the Liquidating Trust Assets, as provided by the Plan. Any vote to be taken by or approval given by the Liquidating Committee shall require only a majority for approval. In the event of resignation, recusal or incapacity of any Liquidating Committee member(s), the remaining Liquidating Committee member(s) are empowered to continue to act as a committee of two or one, with such powers as provided in the Liquidating Trust Agreement and under the Plan including the oversight of the Liquidating Trustee and the approval of certain material transactions. The powers of the Liquidating Committee shall include the power to (i) the Liquidating Committee shall meet and/or consult periodically with the Liquidating Trustee and keep itself apprised of the affairs of the Liquidating Trust; and (ii) in discharging their duties as members of the Liquidating Committee, such members shall act in the best interests of the Beneficiaries of the Liquidating Trust in the same manner as members of an official committee of creditors appointed pursuant to Bankruptcy Code section 1102 discharge their duties to the creditor constituents represented by such committee.

8.7.3    A Liquidating Committee Member may be removed at any time by the written consent of a majority of the Liquidating Committee consisting of all its members. Any removal shall be effective on the date specified in such consent or approval pursuant to the Liquidating Trust Agreement.

8.7.4    Neither the members of the Liquidating Committee nor the representatives or agents of such members shall be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Committee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Committee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts. Any indemnification claim under this section shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the Liquidating Trustee on behalf of the Liquidating Trust. The Liquidating Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

8.8    **Section 1146 Exemption.**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any security or the making, delivery or recording of any instrument of

transfer pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or the revesting, transfer or sale of any real or personal Property of, by or in the Debtors pursuant to, in implementation of, or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

8.9   **Effectuating Documents; Further Transactions.**

The Confirmation Order shall provide that, prior to the Effective Date, David Williams, the President, Chief Executive Officer and director of the Debtors, and after the Effective Date, the Liquidating Trustee, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary to appropriate, to effectuate and further implement the terms and conditions of the Plan or to otherwise comply with applicable law.

8.10   **Pursuit of Causes of Action.**

8.10.1   On the Effective Date, the Causes of Action shall be vested in the Liquidating Trust; except to the extent that a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by Bankruptcy Court Order. The Causes of Action shall be pursued by the Liquidating Trustee. The Debtors are not currently in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Debtors state that any party in interest that engaged in business or other transactions with the Debtors Prepetition or that received payments from the Debtors Prepetition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation.

8.10.2   No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Causes of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, (UNLESS EXPRESSLY SET FORTH IN THE PLAN), THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUSTEE AND THE LIQUIDATING TRUST. Creditors are advised that legal rights, claims, and rights of action the Debtors may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the release of such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtors or the Liquidating Trustee do not possess or do not intend to prosecute a particular claim or cause of action if a particular Creditor

votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, claims, and rights of action of the Debtors, whether now known or unknown, for the benefit of the Liquidating Trust and the Debtors' Creditors. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement.

8.10.3    The Debtors do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 Trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Causes of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any <u>res judicata</u>, collateral estoppel or other preclusive effect which would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

## ARTICLE 9
## THE CLAIMS RESOLUTION PROCESS

9.1    <u>**Establishment and Purpose of the Claims Resolution Process**</u>.

The Allowed Amount of all Securities-Related Claims, for purposes of allowance and distribution in the Liquidation case only, shall be determined pursuant to the Claims Resolution Process set forth in Article 9 of the Plan, unless the Holder of a Securities-Related Claim elects to have his or her claim estimated by the Bankruptcy Court for purposes of distribution under the Plan. The purpose of the Claims Resolution Process shall be to, among other things, establish the method pursuant to which the Claims Resolution Arbitrator will make a final and binding determination with respect to the Allowed Amount of all Securities-Related Claims that cannot be resolved by agreement between the Securities Related Claimant and the Debtor (before the Effective Date) or the Liquidating Trustee (after the Effective Date), in accordance with the Plan and the Confirmation Order.

9.2    <u>**Claims Resolution Expenses**</u>.

The Liquidating Trustee shall pay all Claims Resolution Expenses from the Liquidating Trust in accordance with the Plan.

9.3    <u>**Selection, Duties and Compensation of the Claims Resolution Arbitrator**</u>.

9.3.1    The initial Claims Resolution Arbitrator shall be selected by the Debtors, subject to the approval of the Bankruptcy Court, and such appointment shall be effective as of the Effective Date.

9.3.2    The Claims Resolution Arbitrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and the Conformation Order. For purposes of performing his or her duties and fulfilling his or her obligations under the Plan, the

Claims Resolution Arbitrator shall be deemed to be a party in interest within the meaning of Section 1109(b) of the Bankruptcy Code. The responsibilities of the Claims Resolution Arbitrator shall include (i) the receipt and review of all documentation related to Securities-Related Claims, the determination with respect to Allowed Amount of Securities-Related Claims, both with respect to liability and damages, all as governed by the Plan; (ii) acting as mediator for all mediations of Securities-Related Claims; (iii) the calculation and final and binding determination of the Allowed Amounts of all Securities-Related Claims that are not resolved in a consensual manner; and (iv) such other responsibilities as may be vested in the Claims Resolution Arbitrator pursuant to the Plan, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan, including the retention of professionals.

9.3.3　　The initial compensation of the Claims Resolution Arbitrator shall be approved by the Bankruptcy Court, and such compensation, plus reimbursement for actual, reasonable and necessary expenses incurred by the Claims Resolution Arbitrator, shall constitute Claims Resolution Expenses to be paid from the Liquidating Trust. The Claims Resolution Arbitrator shall not be entitled to increase his or her compensation absent approval of the Liquidating Committee and the United States Trustee or an order of the Bankruptcy Court. From and after the Effective Date, any professionals engaged or retained by the Claims Resolution Arbitrator shall be entitled to reasonable compensation to perform services for the Claims Resolution Arbitrator. The fees and expenses of the Claims Resolution Arbitrator and any professionals employed by the Claims Resolution Arbitrator shall be subject to review by the Liquidating Committee and the United States Trustee. Unless the Liquidating Committee or the United States Trustee files an objection with the Bankruptcy Court within twenty (20) days of the receipt of any invoice of the Claims Resolution Arbitrator or his professionals, the Liquidating Trustee shall be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Claims Resolution Process and the Claims Resolution Arbitrator and his professionals. If an objection is filed, then the Liquidating Trustee shall still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred by the Claims Resolution Process and the Claims Resolution Arbitrator and his professionals that are not subject to an objection. The Bankruptcy Court shall retain jurisdiction over any objections to such fees and expenses that are filed. Neither the Claims Resolution Arbitrator nor any professional he retains, shall be required to file any applications for compensation with the Bankruptcy Court.

9.3.4　　The Claims Resolution Arbitrator shall not be required to give any bond or surety or other security for the performance of his duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall constitute Claims Resolution Expenses.

9.3.5　　The Claims Resolution Arbitrator shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier death, resignation or removal. In the event of the death, resignation or removal of the Claims Resolution Arbitrator, any successor thereto shall be selected by the Liquidating Committee and officially appointed following notice to the Master Service List and a hearing before the Bankruptcy Court.

9.4     **Operation of Claims Resolution Process.**

     9.4.1     As of the Effective Date, the Claims Resolution Arbitrator shall be empowered to act as the final arbitrator and make a final and binding determination with respect to the Allowed Amount of all Securities-Related Claims, unless the Holder of a Securities-Related Claim elects to have his or her claim estimated by the Bankruptcy Court for purposes of distribution under the Plan.

     9.4.2     Detailed procedures for the operation of the Claims Resolution Process are set forth below. The purpose of the Claims Resolution Process is to provide an expedited method for resolution of Securities-Related Claims which will be faster, more efficient, and less expensive than FINRA arbitration or litigation of such Securities-Related Claims. The Liquidating Trustee will review all Potential Securities Related Claims within thirty (30) days from the Effective Date and determine whether to accept the Securities Related Claim for distribution under the Plan as filed or scheduled, or whether further estimation process is necessary. If a Securities Related Claim is not accepted by the Liquidating Trustee, the Liquidating Trustee will contact the Claimant or the attorney for the Claimant and request additional non-privileged information on an approved Securities-Related Claim form, with attached supporting documentation as required, to assist the Liquidating Trustee in evaluating the Claim. Claimants must respond to the Information Request from the Liquidating Trustee within thirty (30) days of the date the request is made by providing the information request or explaining why the information cannot be provided within 30 days. The Information Request will contain an election of whether the Claimant desires his or her claim to be estimated by the Claims Resolution Arbitrator or the Bankruptcy Court. At any time after review of the information provided, the Claims Resolution Arbitrator may engage in informal mediation with the Claimant and/or the Claimant's attorney on the one hand and the Liquidating Trustee on the other to determine if a settlement of the Securities Related Claim can be agreed upon. In the event the Liquidating Trustee and Claimant cannot come to an agreement on the amount of the Claim within ninety (90) days after the Effective Date, the claim shall go to mediation with the Claims Resolution Arbitrator acting as mediator.

     9.4.3     If a Securities Related Claim cannot be resolved by mediation, the Securities-Related Claim shall be decided by the Claims Resolution Arbitrator or the Bankruptcy Court based on the Claimant's election stated in the Claimant's response to the Information Request. The Claims Arbitrator may conduct an arbitration to receive evidence and argument in support of a Securities Related Claim. It is intended that an arbitration pursuant to the Plan will be less formal than normal FINRA arbitrations. Rules of evidence are not applicable. The Claims Resolution Arbitrator will have the discretion to establish appropriate procedures for each arbitration.

     9.4.4     The Claims Resolution Arbitrator shall then calculate the amount of each Allowed Securities-Related Claim. With respect to this loss calculation, there shall be no credit for interest, fees, costs, or attorneys' fees. The determination of the Claims Resolution Process Administrator with respect to the Allowed Amount of all Securities-Related Claims shall be final and binding on all Securities-Related Claimants who elect to have their Securities-Related Claims arbitrated.

# ARTICLE 10
## PROVISIONS GOVERNING DISTRIBUTIONS WITH RESPECT TO CLAIMS OTHER THAN SECURITIES-RELATED CLAIMS

Notwithstanding any provision of this Article 10 to the contrary, Article 10 applies only to Claims that are not Securities-Related Claims.

### 10.1 **Determination of Claims Other Than Securities-Related Claims.**

10.1.1 Unless otherwise ordered by the Bankruptcy Court, and except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Debtors or the Liquidating Trustee), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve notice of any request to the Bankruptcy Court for allowance to file late Unsecured Claims on the Debtors and such other parties as the Bankruptcy Court may direct. If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as an Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) thirty (30) days following the Effective Date or (b) the date sixty (60) days after the Debtors receive actual notice of the filing of such Claim.

10.1.2 Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtors or the Liquidating Trustee effectuates service in any of the following manners (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Liquidation Case on behalf of the Holder of a Claim.

10.1.3 Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Liquidation Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely filed Proof of Claim, the Debtor, the Liquidating Trustee or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and distribution. Procedures for specific Estimation Hearings, including provisions for discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

10.2  **De Minimis Distributions as to Allowed Class 3 General Unsecured Claims.**

In order to avoid the disproportionate expense and inconvenience associated with making a de minimis distribution to the Holder of an Allowed General Unsecured Claim, the Liquidating Trustee shall not be required to make, and shall be excused from making, any initial or interim distribution to such Holder which is in the amount of less than $25.00. At the time of any final distribution to the Holders of Allowed Class 3 Unsecured Claims, all such excused distributions to such Holder shall be aggregated and, if such aggregated amount is $25.00 or more, the Liquidating Trustee shall make a final distribution to such Holder equal to such aggregated amount.

10.3  **Unclaimed Distributions.**

10.3.1    If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within ninety (90) days of the date such check was issued, then the Liquidating Trustee shall provide written notice to such Holder stating that unless such Holder negotiates such check within ninety (90) days of the date of such notice, the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim.

10.3.2    If a Cash distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Liquidating Trustee due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Liquidating Trustee as to such distribution within ninety (90) days of the date such distribution was made, then the amount of Cash attributable to such distribution shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such distribution, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further distributions under the Plan in respect of such Claim.

10.3.3    Any unclaimed Cash distribution as described above originally sent by the Liquidating Trustee shall be contributed by the Liquidating Trustee on behalf of the Liquidating Trust to Texas Comptroller pursuant to the Texas Unclaimed Property Laws.

10.4  **Transfer of Claim.**

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Liquidating Trustee in writing of such transfer and provide sufficient written evidence of such transfer. The Liquidating Trustee shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Liquidating Trustee shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Trustee shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

10.5 **One Distribution Per Holder.**

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for distribution purposes, and only one distribution shall be made with respect to the single aggregated Claim.

10.6 **Effect of Pre-Confirmation Distributions.**

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor or the Liquidating Trustee to such Holder hereunder.

10.7 **No Interest on Claims or Equity Interests.**

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

10.8 **Compliance with Tax Requirements.**

In connection with the Plan, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all distributions hereunder shall be subject to such withholding and reporting requirements.

## ARTICLE 11
## CONDITIONS PRECEDENT

11.1 **Conditions Precedent to Confirmation of the Plan.**

The following are conditions precedent to Confirmation of the Plan, each of which must be satisfied or may be waived in accordance with Article 11.3 of the Plan. These conditions to Confirmation are as follows:

11.1.1 The Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in a form satisfactory to the Debtors.

11.2 **Conditions Precedent to the Effective Date.**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or may be waived:

11.2.1    The Confirmation Order shall have been entered by the Bankruptcy Court and the Confirmation Order and any order of the District Court shall be in form and substance acceptable to the Debtors and the Liquidating Trustee, and the Confirmation Order (and any affirming order of the District Court) shall have become a Final Order; provided, however; that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the option of the Debtors unless the effectiveness of the Confirmation Order has been stayed, reversed or vacated.  The Effective Date may occur, again at the option of the Debtors, on the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order.

11.2.2    The Plan Documents necessary or appropriate to implement the Plan shall have been executed and delivered; all conditions precedent to the effectiveness of each of such Plan Documents shall have been satisfied or waived by the respective parties thereto; and the Plan Documents shall be in full force and effect.  The Plan Documents shall be acceptable to the Liquidating Trustee and the Debtors.

### 11.3    <u>Waiver of Condition Precedent to Confirmation or the Effective Date</u>.

The conditions precedent set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by the Debtors, without any notice to the Bankruptcy Court and without a hearing.

## ARTICLE 12
## INJUNCTIONS, EXCULPATION FROM
## <u>LIABILITY AND RELEASES</u>

### 12.1    <u>Exculpation from Liability</u>.

**The Debtors and their officers, directors, shareholders, agents and employees and their Professionals (acting in such capacity), shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Liquidation Cases; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from gross mismanagement, breach of fiduciary duty, fraud or the willful misconduct of any such party; and, provided further, that this exculpation from liability provision shall not be applicable to any Insiders. The rights granted herein are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Debtors and their Professionals have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.**

12.2    **Debtors Releases.**

In exchange for Wilson Williams waiving his rights to his $200,000 secured claim against WFGI, on or before the Effective Date, the Debtors, on behalf of themselves and their estates, shall be deemed to release unconditionally all of their respective officers, current directors, shareholders, members, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals, (collectively the "Released Parties" and each a "Released Party") from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, and (ii) the foregoing release applies to the Released Parties solely in their respective capacities described above.

12.3    **Term of Certain Injunctions and Automatic Stay.**

12.3.1    All injunctions or automatic stays provided for in the Chapter 11 Cases and Liquidating Trust Agreement pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect as provided in Section 362 of the Bankruptcy Code.

12.3.2    With respect to all arbitrations and all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court and arbitration proceedings) that seek to establish the Debtors' liability on Prepetition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits and arbitrations shall be deemed dismissed only with respect to the Debtors as of the Effective Date, unless the Liquidating Trustee with respect to Claims to be satisfied by it elects to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Liquidating Trustee elects to have the automatic stay lifted and to have the Debtors' liability established by such other courts; and the Prepetition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtors as provided herein.

12.3.3    Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

12.4    **No Liability for Tax Claims.**

Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Claims Bar Date established therefore, no Claim of such Governmental Authority shall be Allowed against the Debtors for taxes, penalties, interest,

additions to tax or other charges arising out of (i) the failure, if any, of the Debtors, any of its Affiliates, or any other Person or Entity to have paid any tax due or to have filed any tax return (including any income, sales or franchise tax return) in or for any tax period ending on or prior to the Effective Date or (ii) an audit of any tax return of the Debtors for a tax period ending on or prior to the Effective Date.

12.5 **Indemnification Obligations.**

All Indemnification Rights shall be released and deemed cancelled on and as of the Effective Date except as otherwise expressly provided in the Plan or in any Plan Document.

## ARTICLE 13
## RETENTION OF JURISDICTION

13.1 **General Retention.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Liquidating Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Liquidating Cases that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

13.2 **Specific Purposes.**

In addition to the general retention of jurisdiction set forth herein, after Confirmation of the Plan and until the Liquidating Cases are closed, the Bankruptcy Court shall retain jurisdiction of the Liquidating Cases for the following specific purposes:

13.2.1 To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Claim or Fee Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

13.2.2 To determine any and all Case, controversies, suits or disputes arising under or relating to the Liquidating Cases, the Plan or the Confirmation Order (including regarding the effect of any release, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions to the consummation and/or Effective Date of the Plan have been satisfied);

13.2.3 To determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Liquidating Cases; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals employed by the Debtor after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtor;

13.2.4 To determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which a Debtor or Debtors is a party or with respect

to which a Debtor or Debtors may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed executory contracts or unexpired leases;

13.2.5 To determine any and all motions, applications, adversary proceedings, contested or litigated matters, Cause of Action, and any other matters involving the Debtors commenced in connection with, or arising during, the Liquidating Cases and pending on the Effective Date, including approval of proposed settlements thereof;

13.2.6 To enforce, interpret and administer the terms and provisions of the Plan and the Plan Documents;

13.2.7 To modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

13.2.8 To consider and act on the compromise and settlement of any Claim against or Equity Interests in the Debtor or the Estate;

13.2.9 To assure the performance by the Debtors and the Liquidating Trustee of their obligations under the Plan;

13.2.10 To correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

13.2.11 To resolve any disputes concerning any release of or limitation of liability as to a non-debtor hereunder or the injunction against acts, employment of process or actions against such non-debtor arising hereunder;

13.2.12 To enforce all orders, judgments, injunctions and rulings entered in connection with the Liquidating Cases;

13.2.13 To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

13.2.14 To review and approve any sale or transfer of assets or Property by the Debtors or the Liquidating Trust, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers;

13.2.15 To determine all questions and disputes regarding title to the assets of the Debtors, the Estate or the Liquidating Trust;

13.2.16 To determine any motions or contested matters relating to the Causes of Action, whether brought before or after the Effective Date;

13.2.17 To determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

13.2.18 To resolve any determinations which may be requested by the Debtors or the Liquidating Trustee of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

13.2.19 To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

13.2.20 To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

13.2.21 To determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Documents;

13.2.22 To enter such orders as are necessary to implement and enforce the injunctions described herein;

13.2.23 To enforce the obligations of any purchaser of any assets of the Debtors;

13.2.24 To determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

13.2.25 To enter an order (or orders) concluding and terminating the Liquidating Cases.

13.3 **Closing of the Chapter 11 Case.**

In addition to the retention of jurisdiction set forth in Article 13, the Bankruptcy Court shall retain jurisdiction of the Liquidating Cases to enter an order reopening the Liquidating Cases after it has closed.

# ARTICLE 14
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

14.1 **Modification of Plan.**

14.1.1 The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

14.1.2 After the entry of the Confirmation Order, the Debtors (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date) may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtors or the Liquidating Trustee (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Master Service List and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interests under the Plan.

14.1.3 After the Confirmation Date and before substantial consummation of the Plan, the Debtors (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtors or the Liquidating Trustee (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Master Service List and a hearing; (c) such modification is accepted by at least two-thirds in dollar amount, and more than one-half in number, of Allowed Claims or by at least two-thirds in amount of Allowed Equity Interests voting in each Class adversely affected by such modification; and (d) the Debtors or the Liquidating Trustee (as the case may be) complies with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

14.1.4 Notwithstanding anything to the contrary contained in this Article 14 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtors (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date).

14.2 **Confirmation Over Objections.**

In the event any Impaired Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn, the Debtors hereby request, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class including by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtors may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior

to the Confirmation Hearing. No such modifications shall require any resolicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtors reserve any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

## ARTICLE 15
## MISCELLANEOUS PROVISIONS

15.1 **No Admissions.**

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtors. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtors in any manner prior to the Effective Date.

15.2 **Revocation or Withdrawal of the Plan.**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtors or any other Person, or (b) prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

15.3 **Standard for Approval of the Bankruptcy Court.**

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

15.4 **Further Assurances.**

The Debtors and the Liquidating Trustee are hereby authorized to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan and the Confirmation Order.

15.5 **Headings.**

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

43369921;3

37

15.6    **Notices.**

15.6.1    All notices, requests or other documents in connection with, or required to be served by, the Plan shall be in writing and shall be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

If to the Debtors:

> Williams Financial Group, Inc.,
> WFG Management Services, Inc.,
> WFG Investments, Inc., and
> WFG Advisors, LP
> ATTN: David Williams
> 2711 N. Haskell Ave. Suite 2900
> Dallas, TX 75204

> with a mandatory copy to counsel for the Debtors:

> AKERMAN LLP
> David W. Parham, SBN: 15459500
> John E. Mitchell, SBN: 00797095
> Scott Lawrence, SBN: 24087896
> 2001 Ross Avenue, Suite 3600
> Dallas, TX  75201
> Telephone:   (214) 720-4300
> Facsimile:   (214) 981-9339
> david.parham@akerman.com
> john.mitchell@akerman.com
> scott.lawrence@akerman.com
>                 -and-
> Esther A. McKean (Admitted *Pro Hac Vice*)
> Florida Bar No. 28124
> Post Office Box 231
> Orlando, FL 32802-0231
> Phone: (407) 423-4000
> Fax: (407) 843-6610
> esther.mckean@akerman.com

> with a mandatory copy to Liquidating Trustee:

> William R. Patterson
> 8310 N. Capital of Texas Highway
> Bldg. 1, Ste. 420
> Austin, TX 78731

15.6.2    Copies of all notices under the Plan to any party shall be given to the Debtors contemporaneously with the giving of notice to such party.

15.6.3    Any Entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth in Article 15.6.1 above.

15.6.4    Notwithstanding anything to the contrary contained in the Plan, no notice shall be required hereunder to the Debtors if they are no longer in existence.

## 15.7    Governing Law.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof

## 15.8    Limitation on Allowance.

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise specified in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

## 15.9    Estimated Claims.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

## 15.10    Consent to Jurisdiction.

Upon any default under the Plan, the Debtors consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Claim or Fee Claim, by voting on the Plan, or by entering an appearance in the Liquidating Cases, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article 12 of the Plan.  The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

15.11 **Setoffs.**

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Liquidating Trustee may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors or the Liquidating Trustee may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such claim that the Debtors or the Liquidating Trustee may have against the Holder of such Claim.

15.12 **Successors and Assigns.**

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

15.13 **Modification of Payment Terms.**

The Liquidating Trustee reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

15.14 **Entire Agreement.**

The Plan and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by such Person or Entity in writing.

15.15 **Severability of Plan Provisions.**

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

15.16 **Confirmation Order and Plan Control.**

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtors and any third party, unless otherwise

expressly provided in the Plan or the Confirmation Order, the Plan controls over the Disclosure Statement and any such agreement, and the Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall control over the Plan.

15.17 **Plan Documents.**

The Plan Documents, if any, shall be filed with the Bankruptcy Court, however, that the Debtors may amend the Plan Documents through and including the Confirmation Date. Upon their filing with the Bankruptcy Court, the Plan Documents may be inspected in the Clerk's Office during normal business hours, may be obtained from the Bankruptcy Court's copying service upon the payment of the appropriate charges, or may be obtained from the Debtors' counsel.

15.18 **Computation of Time.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

15.19 **Substantial Consummation.**

The Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Debtors of the distributions required under the Plan.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated as of December 22, 2017   Respectfully submitted,

WILLIAMS FINANCIAL GROUP, INC.

By:_____
  David Williams, President

WFG MANAGEMENT SERVICES, INC.

By:_____
  David Williams, President

WFG INVESTMENTS, INC.

By:_____
  David Williams, President

WFG ADVISORS, LP

By:_____
  David Williams, President

/s/ David W. Parham
David W. Parham, SBN: 15459500
John E. Mitchell, SBN: 00797095
Scott Lawrence, SBN: 24087896
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Telephone: (214) 720-4300
Facsimile: (214) 981-9339
david.parham@akerman.com
john.mitchell@akerman.com
scott.lawrence@akerman.com
  -and-
Esther A. McKean (Admitted *Pro Hac Vice*)
Florida Bar No. 28124
Post Office Box 231
Orlando, FL 32802-0231
Phone: (407) 423-4000
Fax: (407) 843-6610
esther.mckean@akerman.com

Counsel for the Debtors

43369921;2       Signature Page